THE STATE ex rel. FEDERAL LEAD COMPANY v. GEORGE D. REYNOLDS et al., Judges of St. Louis Court of Appeals.

In Banc, November 14, 1912.

1. **REFERENCE: Compulsory.** Though the action be one at law and a reference is not by written consent of parties, yet if it involves long and intricate accounts, arising upon charges and counter charges of alleged breaches of contract, it is one for compulsory reference.

2. ————: **Practice: Exceptions: What Matters Considered.** Where a suit in equity, or an action at law subject to compulsory reference, is sent to a referee, the trial court may not only sustain exceptions to the referee's report and set aside his findings, but may go on and make findings of its own and render judgment contrary to that of the referee; and all its rulings and acts are subject to review in an appellate court and to its revising judgment, where exceptions are properly preserved below and brought up on appeal.

3. **APPELLATE JURISDICTION: Amount in Dispute: How Determined.** The amount in dispute by which the jurisdiction of an appellate court is fixed, is not necessarily determined in all cases by the amount of the judgment appealed from, nor by the amount claimed in the petition or counterclaims, but is determined by the amount that actually remains in dispute between the parties, *on the appeal*, and subject to the determination by the appellate court of the legal questions raised by the record.

4. ———: ———: ———: Colorable Amounts. To get at the amount in dispute for appellate purposes, the court may look beyond the judgment and far enough into the record, to see that its proper jurisdiction is not cut away, or an unwarranted jurisdiction is not foisted upon it, by design, inadvertence or colorable amounts; and to that end it may eliminate amounts set at rest by the pleadings, or determined below and not appealed from by the losing party, or it may consider counterclaims where they in fact remain in the case.

5. ———: ———: Reference: Counterclaim: Prohibition. Where the suit was for a *quantum meruit* under a contract and for loss of profits, and defendant set up numerous counterclaims, and the matter was referred to a referee, who took the evidence and made report, in which, by balancing claims and counterclaims, he found in favor of defendant in the sum of $2656.68; to which plaintiff alone filed exceptions, which were sustained and defendant's counterclaims disallowed by the court, and judgment was rendered in favor of plaintiff for $6817.48, the amount in dispute on defendant's appeal is the sum of those two items, namely, $9474.16, and the Supreme Court alone has appellate jurisdiction; and if the appeal was allowed to the Court of Appeals, and it overruled a motion to transfer to the Supreme Court alleging the amount in dispute to be in excess of $7500, and that motion is overruled, the Supreme Court by its writ of prohibition will order the case transferred to it.

6. ———: ———: Former Decisions. Where the court in former decisions has held that the amount of the judgment appealed from determines the appellate jurisdiction, the holding was correct as applied to the record facts there held in judgment, but the general language used in them was not intended as an unvarying pronouncement to be mechanically and always applied to a different state of facts and different issues.

7. PROHIBITION: Costs. Judges should not be multced in costs and other damages for errors of judgment in judicial matters; so that, where the preliminary rule in prohibition against the judges of a court is on the hearing made absolute, the costs should be taxed against relator.

## Prohibition.

WRIT ALLOWED.

*Robert & Robert* for relator.

There is no question but what the amount in dispute in this case is above $7500. The respondents

take the position that when the judgment amounted to but $6817.48 and the defendant alone appealed, that is the sum in dispute, overlooking, entirely, the fact that relator has complained of the setting aside of the finding of the referee in its favor, amounting to $2656.68 with interest from April 4, 1907. Had the Abbot-Gamble Company not filed exceptions to the referee's report, that would have been the amount of the judgment. It did, however, file exceptions which were sustained and hence that sum to which the referee found the relator entitled, was directly in dispute. The court further found in favor of the plaintiff $6817.48 and the relator complained of that, as well as setting aside the finding of the referee. There is, therefore, no question but what those two sums added together form the amount in dispute. Thus the aggregate sum in dispute is $9726.54. State ex rel. v. Lewis, 96 Mo. 146; Conrad v. DeMontcourt, 138 Mo. 321; May v. Trust Co., 138 Mo. 447; Douglas v. City, 147 Mo. 432.

*Seneca N. Taylor* for respondents.

LAMM, J.—The Federal Lead Company, complaining of the St. Louis Court of Appeals for that it was exercising jurisdiction of an appeal from a judgment of the St. Francois Circuit Court in favor of Abbot-Gamble Company against said Lead Company, moved for a preliminary rule here in prohibition. Such rule was issued and served, citing respondents, the judges of that court, to show cause. By their return and by a demurrer thereto, an issue at law is sprung, to-wit, whether, on that return and on the record lodged in the Court of Appeals in the original cause (and presented here for our consideration), the rule should be made absolute and a writ go.

At a certain time, the Abbot-Gamble Company sued the Lead Company in three counts, the subject-

matter of all of them relating to a contract by which the former undertook to furnish the labor, machinery and material (barring certain exceptions) to construct the foundations and ground floors for the latter's mill and reduction works near Flat River. In the first count judgment was asked for $11,882.29 (on a *quantum meruit*); by the second, for $1011.45 (additional labor and work); by the third $9,300 (loss of profits).

For its first defense in that cause, the lead company relied on a general denial. For its second, by way of affirmative allegations of matter constituting a counterclaim, and further by way of specific denials and admissions, its answer worked out the result that plaintiff had earned under the contract a surplus over payments in the sum of $3766.54, but that there was due from plaintiff to defendant (by reason of averments of fact made in the answer) a much larger sum than that. As to the second count the amount claimed thereon by plaintiff stood confessed, but it was averred that plaintiff owed defendant, by reason of certain facts, a much larger sum. The answer then goes on to set up counterclaims arising out of the contract and transaction pleaded as the foundation of plaintiff's claim—one counterclaim aggregating $15,688.26 and another $788.70.

A reply coming in to this answer (and defendant also replying to the new matter set up in plaintiff's replication), on motion of plaintiff the cause was ordered referred to Julian Paul Cayce, Esq., as referee, who qualified and assumed the burden. After a year and four months spent in taking a great volume of testimony, the referee reported the amount due defendant on the counterclaims to be $17,209.83, and the amount due plaintiff on the causes of action stated in its petition to be $14,553.15, leaving due defendant, on striking a balance, the sum of $2656.68. For that bal-

ance the referee recommended a judgment in favor of defendant.

(*Note*: While the matter was *in fieri,* plaintiff became a bankrupt and Mr. Folks, its trustee in bankruptcy, was allowed to appear as a party and carry on the suit.)

At the proper stage, plaintiff filed exceptions to the report of the referee, but defendant was content and filed none. Presently plaintiff's exceptions were sustained, all defendant's counterclaims were disallowed, and judgment went in plaintiff's favor on the first and second counts in the aggregate sum of $6817.48. From that judgment defendant alone appealed, having in apt form and due time preserved alive its exceptions to the court's action in sustaining plaintiff's exceptions to the referee's report, in disallowing its counterclaims and in giving judgment for plaintiff.

The appeal was allowed to the St. Louis Court of Appeals. There defendant filed a motion to transfer the cause here, grounding its motion on the theory that the amount in dispute on appeal exceeded the jurisdiction of the Court of Appeals. That court having overruled that motion, defendant came here with its suggestions for prohibition, with the result stated at the outset.

Having summarized enough of the record for our purposes, we are of opinion that on such summary an absolute rule should be entered and a writ go.

This, because:

(a). While the original action was at law, yet the reference in hand was not by "the written consent of the parties." [R. S. 1909, Sec. 1995.] The long and intricate accounts involved, together with a multiplicity of refined details arising on charges and countercharges at issue for alleged breaches of the contract, all set forth in the pleadings and exhibits in fifty pages of solid print, made the cause eminently one for

*compulsory* reference within the purview of our statute. [R. S. 1909, Sec. 1996.]

Indeed, defendant seems to have acquiesced in the order of reference, and, we take it, thereby impliedly admitted that the case belonged to a class subject to compulsory reference, and in which defendant had no constitutional right to a jury.

(b). Whatever be the rule in cases that could only be sent to a referee by agreement of parties, yet where a cause in equity is sent to a referee or where a case at law (subject to a compulsory reference) is sent to a referee, the settled rule is that trial courts may not only sustain exceptions to the referee's report and set aside his findings, but may go on and make findings of its own and render judgment contrary to that recommended by the referee; and (which is closer home) all of such rulings and acts *nisi* are subject to review by an appellate court and to its revising judgment when (as here) exceptions are properly preserved below and brought up for disposition above. [Caruth-Byrnes Co. v. Wolter, 91 Mo. l. c. 488; State ex rel. v. Hurlstone, 92 Mo. l. c. 332, *et seq.*; Wentzville Tobacco Co. v. Walker, 123 Mo. l. c. 671; Small v. Hatch, 151 Mo. l. c. 306; Williams v. Railroad, 153 Mo. l. c. 495; Smith v. Baer, 166 Mo. 392; *Vide,* State ex rel. v. Woods, 234 Mo. l. c. 26, and Star Bottling Co. v. Exposition Co., 240 Mo. l. c. 639, *et seq., arguendo,* on the scope and character of the issue below on exceptions filed to a referee's report.]

(c). The question in judgment being the amount in dispute on appeal, not only propositions ruled in paragraphs *a* and *b* are of help in marking the road the court must travel in reaching the amount in dispute, but there is another proposition of kin thereto, to-wit: The amount in dispute by which the jurisdiction of the appellate court is fixed (in *some* cases maybe, but) in all cases is not necessarily determined by the amount of the judgment appealed from, nor by

the amount claimed in the petition or counterclaims, but is determined by the amount that actually remains in dispute between the parties, *on the appeal,* and subject to the determination by the appellate court of the legal questions raised by the record. [State ex rel. v. Lewis, 96 Mo. l. c. 148; Douglas v. Kansas City, 147 Mo. l. c. 432; Bridge Co. v. Transit Co., 205 Mo. l. c. 179, *et seq.*; Vanderberg v. Gas Co., 199 Mo. l. c. 458, *et seq.*]

(d). Accordingly it is accepted doctrine that, to get at the amount in dispute for appellate purposes and preserve the constitutional integrity of this court on the matter of its jurisdiction, we may look within the mere shell of the judgment and far enough into the record to see that our proper jurisdiction is not cut away, or that jurisdiction is not foisted upon us by design, inadvertence or by mere colorable amounts. So, we may eliminate amounts set at rest by the pleadings, or determined below and not appealed from by the losing party, or consider counterclaims (where the case cries out for it on appeal). [Conrad v. De Montcourt, 138 Mo. l. c. 321; Wilson v. Russler, 162 Mo. 565; State ex rel. v. Lewis, supra; In re Burke's Estate, 169 Mo. 212; and cases cited supra in paragraph *c.*]

(e). The premises all considered, it seems plain this court has jurisdiction of the case of Folks, Trustee of Abbot-Gamble, v. Federal Lead Company; for, at bottom, the issue on appeal is: Did the court err in setting aside the findings of the referee whereby, by balancing claims and accounts, a net balance is found in favor of defendant on its counterclaims in the sum of $2656.68; and commit further error by rendering judgment in favor of plaintiff, after disallowing all such counterclaims, in the sum of $6817.-48? That the amount in dispute, subject to the judgment of the appellate court on review, is the *sum* of those two items seems clear. Take an a, b, c case to

illustrate: If Roe claim one dollar of Doe and the court not only takes that dollar from him but two dollars more and gives them to Doe, evidently he is out of pocket and injured in the sum of three dollars, and, on Roe's appeal, the amount in dispute would be those three dollars. In this case defendant was content to abide the finding of the referee awarding it $2656.68; but the trial court not only took away its right to the sum so found, but mulcted it in the further sum of $6817.48. Defendant appealed to correct that situation and the amount in dispute, as said, is the sum of the two items. Under the authorities cited, supra, the appellate court has power, if the justice of the case demands it, to give judgment (or direct a judgment) that shall cut away plaintiff's recovery in whole or part, or re-establish the finding of the referee in whole or part—that is, it can undo what was done below and do rightly what was done wrongly.

(f). There are cases where, on defendant's appeal, we have used general language to the effect that the amount of the judgment appealed from determines appellate jurisdiction. Jackson v. Binnicker, 179 Mo. 139; McGregor v. Pollard, 130 Mo. 332 and Hensler v. Stix, 185 Mo. 238, are samples of such cases. When applied to record facts held in judgment in those cases, the general language in which the rule is put is well enough, for that is the general rule. But that general language must be understood as referable to the facts and issues of those cases, and not as an unvarying legal pronouncement or formula to be mechanically and always applied to a different state of facts and different issues. The court, having an eye to the case in hand, was not called on to state all the qualifications and limitations of the rule and deliver a charge on the whole body of the law. The writing of opinions would be an intolerable task and the reading of them even worse if that were good doc-

trine.　A court can write sound law without writing all there is of it at one time.　[State ex rel. Bixby v. St. Louis, 241 Mo. 231.]

The rule in prohibition is, therefore, made absolute and the St. Louis Court of Appeals is ordered to transfer the cause to this court.

Let the writ go—at relator's costs however. Judges should not be mulcted in costs or other damages for errors of judgment in judicial matters.

All concur.