JOHN POWERS, Appellant, v. MISSOURI PACIFIC RAILWAY COMPANY.

Division Two, December 23, 1914.

1. **SUPREME COURT: Appellate Jurisdiction: Amending Petition: Amount Reduced after Nonsuit and Before Appeal.** Where a plaintiff who asked $10,000 damages took a nonsuit with leave, and after his motion to set aside the nonsuit and grant him a new trial was overruled the trial court allowed him, before taking his appeal, to amend his petition by reducing his prayer for damages from $10,000 to $4500, the Supreme Court, and not the Court of Appeals, has jurisdiction of his appeal.

2. **MASTER AND SERVANT: "Operating Railroad:" Fellow-Servant Act: Car Repairer.** A car repairer while working at his task in the repair yards of a railroad company is "engaged in the work of operating such railroad" within Sec. 5434, R. S. 1909, and is entitled to damages from the company for injuries caused by the negligence of a fellow-servant.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams,* Judge.

REVERSED AND REMANDED.

*A. R. & Howard Taylor* for appellant.

(1)  The action of the St. Louis Court of Appeals transferring this cause to this court was erroneous and unauthorized by law.  The reduction of

plaintiff's claim from $10,000 to $4500, before the appeal was taken, left the amount in controversy within the jurisdiction of the St. Louis Court of Appeals at the time the appeal was taken. State *ex rel.* v. Broaddus, 212 Mo. 689. (2) The case of Schwyhart v. Barrett, 223 Mo. 501, on which the St. Louis Court of Appeals grounded its decision transferring this case to this court, was not an authority for such action. (3) Assuming that the transfer of the cause was correct, and that this court is possessed of jurisdiction, as we are willing to hope, then the action of the trial court in taking the case from the jury by a peremptory instruction was error. (4) The appellant was engaged at the time of his injury in the work of operating respondent's railroad, as was the co-servant Krietmeier, within the language and intent of Sec. 5434, R. S. 1909, then in force. Callahan v. Railroad, 170 Mo. 495, 194 U. S. 628; Sams v. Railroad, 174 Mo. 99; Hawkins v. Smith, 242 Mo. 696; Railroad v. Melton, 218 U. S. 48; Orendorf v. Railroad, 116 Mo. App. 348; Houston v. Railroad, 129 Mo. App. 583; Turner v. Railroad, 132 Mo. App. 43; Pratt v. Railroad, 139 Mo. App. 508; Prash v. Railroad, 151 Mo. App. 413. (5) There was no evidence in the case on which the court could declare the appellant negligent as a matter of law. Prash v. Railroad, 151 Mo. App. 413.

*James F. Green* for respondent.

(1) The cause was properly transferred to this. court, as the amount named in the petition on which the case was tried was in excess of $7500. Schwyhart v. Barrett, 223 Mo. 501; Hennessy v. Brewing Co., 145 Mo. 115; Casey v. Transit Co., 116 Mo. App. 270; Union v. Mfg. Co., 251 Mo. 450. (2) Work in a shed or machine shop repairing a car is not "operating a railroad" within the meaning of Sec. 5434, R. S. 1909.

Callahan v. Railroad, 170 Mo. 496; Overton v. Railroad, 111 Mo. App. 613; Sams v. Railroad, 174 Mo. 66; Williams v. Railroad, 106 Mo. App. 63; Stubbs v. Railroad, 85 Mo. App. 196; Schneider v. Railroad, 117 Mo. App. 129; Vilter Mfg. Co. v. Kent, 105 S. W. 525; Moit v. Railroad, 82 C. C. A. 430; Holtz v. Railroad, 72 N. W. 806; Perry v. Railroad, 41 N. W. 289. (3) There was no negligence proved in the case. Plaintiff's injury was the result of mere accident, for which there is no liability. Wendall v. Railroad, 100 Mo. App. 556; Saxton v. Railroad, 92 Mo. App. 494; Henry v. Railroad, 113 Mo. 525; Sawyer v. Railroad, 37 Mo. 262.

WILLIAMS, C.—This is a suit to recover damages for personal injuries received by plaintiff while in the employ of the defendant company. Trial was had in the circuit court of the city of St. Louis, and at the close of plaintiff's evidence the court sustained defendant's demurrer to the evidence and permitted the plaintiff to take a nonsuit with leave to move to set the same aside. Thereafter, and within proper time, plaintiff filed a motion to set aside the nonsuit and to grant him a new trial in the cause, which motion was by the court overruled. Several days thereafter, but during the same term of court at which plaintiff's motion for a new trial was overruled, the court, by order of record, permitted plaintiff to amend his petition by interlineation by changing the prayer for damages from $10,000 to $4500, and thereafter permitted plaintiff to take an appeal to the St. Louis Court of Appeals. After the case reached the St. Louis Court of Appeals, that court, upon respondent's motion, transferred the cause to the Supreme Court on the ground that the amount in controversy, at the time judgment was rendered in favor of defendant, was beyond the jurisdiction of the Court of Appeals.

Plaintiff's evidence tends to establish the following facts: On the day the injury occurred, plaintiff, together with a fellow workman, Krietemeyer, was in the employ of the defendant company doing repair work on cars located in defendant's repair yards near Compton avenue in the city of St. Louis. Many tracks were located in this repair yard and a portion of same was covered by a long rough shed, open on the sides but covered by a roof. The machine shops of defendant company were located some 300 feet distant from the repair yard. Cars needing repair were shoved into this repair yard over the railway tracks therein located. The heavy repair work was done at the yards near Compton avenue, and the light repair work at the repair yards at Twenty-first street. At the time of the injury, plaintiff and his co-worker were engaged in repairing the coupling on one of the cars located in this repair shop. The trucks had been removed from under this car and the car was supported by barrels or trusses. The trucks were located on the track, ahead of the car, and after the repair work was finished, the trucks were to be rolled back under the car so that the car could be taken out and placed in a train. In repairing the car in question, it became necessary to drive the brake-pin, which had been bent, out of the coupling. In doing this plaintiff held a portion of the coupling in such position that his coemployee, Krietemeyer, could strike the brake-pin with a maul. Krietemeyer, without looking for any obstructions that the maul might encounter in being swung, made a swing with the maul, and in so doing the maul engaged the brake guide above the coupling, causing the maul to glance out of its course and strike plaintiff's left hand, mashing and breaking the bones in the third finger thereof. Afterwards blood poisoning developed in the injured finger and it was necessary to amputate the finger at the middle joint. Plaintiff was laid up nearly a year with his injury and it

became necessary to cut open his hand to drain the pus. As a result of the injury, he was rendered unable to follow his former occupation as a car repairer and had been rendered unable to secure employment of any kind on account of his disability.

Appellant makes the following contentions: First, that the St. Louis Court of Appeals erroneously transferred this case to the Supreme Court; second, that at the time of his injury, appellant was engaged in the work of operating respondent's railroad, as was his co-servant, Krietemeyer, within the language and intent of section 5434, Revised Statutes 1909, and that therefore the trial court erred in overruling his motion to set aside the nonsuit and for new trial.

I. After final judgment, but before the appeal was allowed, the circuit court permitted plaintiff to strike out the words "ten thousand" in the prayer of the petition and to interline in lieu thereof the words "forty five hundred." At the time the appeal was taken the jurisdictional limit of the Court of Appeals was $4500. Appellant contends that by thus changing his petition, after final judgment, the amount in dispute, for the purposes of this appeal, was placed within the jurisdictional limit of the Court of Appeals and that hence the Court of Appeals later erroneously certified the case here. We are unable to agree with this contention. In determining the amount in dispute for the purpose of appellate jurisdiction where the plaintiff is cast in his suit and appeals, as in the present instance, the amount claimed in the petition is generally taken as the amount in dispute. [Schwyhart v. Barrett, 223 Mo. 497, l. c. 501.]

When a money judgment is rendered the amount of the judgment controls, if the appeal is taken by the judgment debtor, and the difference between the

*Appellate Jurisdiction: Petition Amended After Judgment and Before Appeal.*

262Mo45

amount claimed and the amount of the judgment if the appeal is taken by the judgment creditor. [Foundry & Manufacturing Company v. Moulder's Union, 251 Mo. 448 and cases therein cited.]

In the case of Schwyhart v. Barrett, supra, where a money judgment was rendered and the appeal was taken by the judgment debtor, it was held that "the amount in dispute is to be determined by the amount due at the date of the judgment from which the appeal is taken." Applying this rule to the present case, the amount due, or claimed to be due, at the date of the judgment from which the appeal was taken, was, as then shown by the petition, $10,000, and therefore sufficient to bring the case within the jurisdiction of this court.

II. Was plaintiff, at the time of

**Fellow-Servant Act: Operating Railroad: Car Repairer.** receiving the injury, engaged in doing such work for the defendant company as to bring him within the aid of section 5434, Revised Statutes 1909, commonly known as the Railroad Fellow-Servant Act? In other words, was he "engaged in the work of operating such railroad," as provided by said statute? This is the main question presented by this appeal. That Krietemeyer was the fellow-servant of plaintiff is not disputed. There was also sufficient evidence to pass to the jury for determination the question as to whether the act of Krietemeyer which resulted in the plaintiff's injury amounted to negligence.

In determining whether plaintiff's work was within the protection of the above statute, little aid is received from a review of the decisions of the courts of other States. This is due in a great measure no doubt to differences existing in the respective statutes. One line of authorities holds that the work must be such as carries with it the peculiar hazard of railroad operation, incident to the movement of trains. Another line of authorities holds to a more liberal interpreta-

tion. Whether the first line of authorities may or may not have been somewhat influenced by the belief that such limited construction was necessary in order to allow the act to pass certain constitutional barriers cannot be determined with accuracy, yet a review of those authorities shows that the courts so holding had such danger in mind.

That such limited construction is not necessary in order to allow the statute to clear the Federal Constitutional barriers was clearly settled by the Supreme Court of the United States in the case of Louisville & Nashville Railroad Company v. Melton, 218 U. S. 36.

A sufficiently comprehensive review and discussion of the Employer's Liability Statutes and decisions of other States, together with a discussion of the proper construction to be placed upon the Missouri statute will be found in the case of Callahan v. Merchants' Bridge Terminal Railroad Company, 170 Mo. 473, and therefore further discussion of the same would serve no useful purpose in the present case. In that case the Court in Banc in construing the Missouri statute held that a member of a section gang stationed underneath a railroad bridge to warn passers-by of the danger from falling ties that were being removed and discarded by the section men at work in repairing the bridge, was "engaged in the work of operating such railroad" within the meaning of the Missouri statute, and that the railroad company was liable in damages for his injuries sustained by reason of the negligence of his co-employees. In discussing the statute the court said:

"Under the language of our statute it is necessary for the injured employee to show that he was injured 'while engaged in the work of operating such railroad.' Construed either by its own terms or in the light of the cases cited from other jurisdictions, it results in holding that the right to recover is not limited to cases where the injury is inflicted by reason of the

negligence of a fellow-servant while actually moving a train or engine, but that the law embraces all cases where the injury is inflicted upon an employee while engaged in the work of operating a railroad, by reason of the negligence of any fellow-servant who is likewise engaged in the work of operating a railroad, and that the term 'operating such railroad' includes all work that is directly necessary for running trains over a track, and that it includes section hands who are engaged in working upon, repairing or putting in shape the track, roadbed, bridges, etc., over which the trains must run.''

The construction placed upon the statute by the Callahan case has remained undisturbed for many years and has been many times followed by the different courts of appeal. No reason is now advanced nor does any occur to us calling for a reconsideration of the conclusion therein reached.

Applying the logic and analogy of that case to the present we are driven, irresistibly, to the conclusion that plaintiff, at the time of receiving his injury, was "engaged in the work of operating such railroad" and clearly within the scope of said statute. The work of repairing the cars in the repair yard of the defendant company was as closely connected with and as necessary for the operation of trains as was the work of track repair in the Callahan case.

It therefore follows that the judgment should be reversed and the cause remanded for a new trial. It is so ordered. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. *Walker, P. J.,* and *Brown, J.,* concur; *Faris, J.,* not sitting.